UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-702 CAS (JCGx) | Date | February 6, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA; ET AL. v. FIRST AMERICAN TITLE INSURANCE CO.; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| CATHERINE JEANG | LAURA ELIAS | | N/A |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| Glenn Haese | | Raymond Walker | |
| | | James Smith (by telephone) | |

**Proceedings:** DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT (filed December 12, 2011) [DEFENDANT SEY PET LLC'S JOINDER IN MOTION TO DISMISS (Filed 12/2/11)]

PLAINTIFFS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND FOR STAY OF PROCEEDINGS PENDING RESOLUTION OF MOTION AND APPEAL (filed December 19, 2011) [DEFENDANT SEY PET LLC'S JOINDER IN MOTION TO DISMISS (Filed 1/10/12)]

## I. INTRODUCTION AND BACKGROUND

This case centers around what was to be a luxury property development in Puerto Peñasco, Mexico called Play Azul.

The developers of Playa Azul formed Seypet Resorts, LLC, Seypet Resorts, S. de R.L. de C.V., and Sey Pet (collectively, the "Seypet entities") to promote and sell Playa Azul condominium units. First American Title Insurance Company ("First American"), a California corporation, issued a $15 million title insurance policy ("the Policy") on the property effective December 13, 2004. Sey Pet is the named insured on the Policy.

There is currently a dispute in Mexico as to the ownership and conveyance of the land that encompasses the real estate on which Playa Azul is to be located. Specifically, there is a disagreement among the original landowners and the subsequent purchasers "regarding the consideration paid for the property as part of a conveyance of the North Beach land in 2004." As a consequence of this dispute, in early 2005, a lawsuit was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-702 CAS (JCGx) | Date | February 6, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA; ET AL. v. FIRST AMERICAN TITLE INSURANCE CO.; ET AL. | | |

filed in Puerto Peñasco. The lawsuit was subsequently re-filed in Hermosillo, Mexico in December 2005 or January 2006. The litigation in Mexico over title to the property (the "Mexican Litigation") is ongoing, and First American is defending the litigation on behalf of its insured, Sey Pet.

Between June 2005 and March 2007, plaintiffs entered into contracts with the Seypet entities in the form of Promise of Trust Agreements ("POTAs") and paid more than $2.5 million to purchase condominiums at Playa Azul without any knowledge of the Mexican Litigation. Plaintiffs allege they were "induced and enticed to invest in Playa Azul under similar circumstances, including but not limited to, advertising, promotions, and solicitations for Playa Azul in both Mexico and the United States." Plaintiffs were first made aware of the Mexican Litigation on June 20, 2007, when one of the developers of Playa Azul informed plaintiffs of the ongoing dispute. To date, plaintiffs have not come into possession of their condominium units, and construction on Playa Azul has lagged.

On June 17, 2010, plaintiffs filed suit against the Seypet entities and First American in the United States District Court for the District of Arizona. On January 21, 2011, the Honorable Stephen M. McNamee entered an order dismissing all direct claims against the Seypet entities on the grounds that an agreement entered into between plaintiffs and the Seypet entities contained a valid, enforceable forum selection clause designating the forum as the "competent courts of the city of Puerto Peñasco, Sonora, United Mexican States."[1] See Dkt. 121 at 15. The same day he dismissed the claims against the Seypet entities, Judge McNamee transferred all claims against First American to this judicial district. On April 13, 2011, this Court granted plaintiffs' motion under Rule 19(a) of the Federal Rules of Civil Procedure to join Sey Pet as an indispensable party in this forum. See Dkt. 169 at 4.

In an order dated July 11, 2011, the Court dismissed plaintiffs' Second Amended Complaint ("SAC') in its entirety. Dkt. 200 at 15. Specifically, the Court dismissed with prejudice plaintiffs' claims against First American for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief on the grounds

---

[1] The court held that the forum selection clause applied equally to all of the Seypet defendants because "Plaintiffs premise their claims against the Seypet Defendants on the notion that they are alter egos of Seypet Mexico." Dkt. 121 at 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**O**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-702 CAS (JCGx) | Date | February 6, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA; ET AL. v. FIRST AMERICAN TITLE INSURANCE CO.; ET AL. | | |

that plaintiffs lack standing because they are not third-party beneficiaries under the Policy.[2] The Court also dismissed with prejudice plaintiffs' claims for fraud, conspiracy, negligent misrepresentation, negligence, ILSA, RICO, and the UCL to the extent these were premised on the theory that First American is directly liable to plaintiffs for misrepresenting the status of Sey Pet's title to Playa Azul or for publishing misleading information in its advertising. However, to the extent these claims were premised on the theory that First American conspired with Sey Pet to fail to disclose the existence of the Mexican Litigation to plaintiffs, the Court dismissed these claims without prejudice to plaintiffs alleging specific facts showing the existence of a conspiracy.

On September 28, 2011, plaintiffs filed their third amended complaint ("TAC") against First American and Sey Pet. The TAC alleges claims for: (1) breach of contract, (2) negligent misrepresentation, (3) fraud, (4) violation of the Interstate Land Sales Full Disclosure Act ("ILSA"), (5) conspiracy, (6) violation of the Racketeer Influenced and Corrupt Organizations ("RICO"), (7) breach of the covenant of good faith and fair dealing, (8) declaratory relief, and (9) negligence of officers and directors.[3]

The new factual allegations in the TAC relating to plaintiffs' conspiracy theory are primarily based on a Power Point presentation given by Khelo, the developer of a neighboring project called Riviera Real, regarding the status of that development in the context of the Mexican Litigation. TAC, Exh. 2 ("Khelo Presentation"). The TAC quotes statements from Khelo Presentation, and alleges that these show that First American conspired with Sey Pet to conceal the Mexican Litigation.[4] TAC ¶¶ 203–18,

---

[2] On October 13, 2011, the Court denied plaintiffs' renewed motion for reconsideration regarding whether plaintiffs were intended third-party beneficiaries under the Policy. Dkt. 215.

[3] The Court only considers plaintiffs' claims which were dismissed without prejudice, i.e., those premised on First American's alleged participation in a conspiracy with Sey Pet.

[4] Specifically, plaintiffs assert that the following statements from the Khelo Presentation demonstrate the existence of a conspiracy to defraud plaintiffs:

(1) "The North Beach area had since before the sale an insurance company title authorized by the corporation First American Insurance Title Company, so that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-702 CAS (JCGx) | Date | February 6, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA; ET AL. v. FIRST AMERICAN TITLE INSURANCE CO.; ET AL. | | |

246–49, 257–69, 308–20. Plaintiffs aver that these statement show: (1) that First American encouraged development and sale of condominium units after the Mexican Litigation commenced; (2) that First American promoted properties in the area where Playa Azul is located; (3) that First American had knowledge of the Mexican Litigation; and (4) that First American sought to hide the Mexican Litigation from plaintiffs.

Additionally, plaintiffs point to the existence of a Tolling Agreement between First American and Sey Pet, which tolled the limitations period on certain claims for both Sey Pet and its customers as demonstrating the existence of a conspiracy.[5]

First American moved to dismiss plaintiffs' TAC on December 12, 2011. Plaintiffs opposed the motion on December 23, 2011. Defendants replied on January 16, 2011. On December 19, 2011, plaintiffs filed a motion to certify order for interlocutory appeal and for stay of proceedings pending resolution of motion and appeal. First American opposed the motion on January 10, 2012, and plaintiffs replied on January 19, 2012. The parties' motions are presently before the Court.

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

---

Company had certainty to insure lots."

(2) "They prohibited any communication with any other people different to the attorneys"; and

(3) "We look for an insurance title to guarantee the marketing."

[5] In particular, plaintiffs point to the following statement in the Tolling Agreement: "WHEREAS, the parties are desirous of avoiding or at least delaying potential litigation arising from those disputes." SAC ex. 12, at 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-702 CAS (JCGx) | Date | February 6, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA; ET AL. v. FIRST AMERICAN TITLE INSURANCE CO.; ET AL. | | |

recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  However, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Twombly and Iqbal); Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6).  United States v. City of Redwood City, 640 F.2d 963,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

0

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-702 CAS (JCGx) | Date | February 6, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA; ET AL. v. FIRST AMERICAN TITLE INSURANCE CO.; ET AL. | | |

966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

**B.    Fed. R. Civ. P. 9(b)**

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity. Federal Rule of Civil Procedure 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud." Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1103–04 (9th Cir. 2003). A claim is said to be "grounded in fraud" or "'sounds in fraud'" where a plaintiff alleges that defendant engaged in fraudulent conduct and relies on solely on that conduct to prove a claim. Id. "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Fed. R. Civ. P.] 9(b)." Id. However, where a plaintiff alleges claims grounded in fraudulent and non fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements. Id. at 1104.

A pleading is sufficient under Fed. R. Civ. P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth. In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Thus, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct alleged." Vess, 317 F.3d at 1106 (internal quotation marks and citations omitted). It is not sufficient to merely identify the transaction. Rather "[t]he plaintiff must set forth what is false or misleading about a statement and why it is false." Id. (citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-702 CAS (JCGx) | Date | February 6, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA; ET AL. v. FIRST AMERICAN TITLE INSURANCE CO.; ET AL. | | |

When a party pleads fraud against a corporation, the already heightened pleading standard is further heightened. "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153 (1991).

## IV. DISCUSSION

First American argues that no factual allegation shows the existence of an agreement between First American and Sey Pet to withhold information about the Mexican Litigation from purchasers. Mot. at 2, 11. According to First American, none of plaintiffs' allegations gives rise to any inference that First American was even aware that Sey Pet was concealing the Mexican Litigation from plaintiffs, let alone that First American agreed to such a scheme. Id. at 12.

In opposition, plaintiffs argue that the statements in the Khelo Presentation, when considered in conjunction with the Tolling Agreement, provide "sufficient detail as to First American's role" in the alleged conspiracy. Opp'n at 2. Plaintiffs argue that the fraud "underlying both Playa Azul and Riviera Real is obvious" because Sey Pet and Khelo gained from using the "First American" name to market their condominiums while First American could avoid suit by purchasers. Further, plaintiffs contend that there is no rational basis for Sey Pet to enter into the Tolling Agreement, by which it agreed not to enforce the Policy against First American. Id. at 4.

The Court finds that plaintiffs have not sufficiently alleged specific facts showing the existence of a conspiracy between First American and Sey Pet to defraud purchasers of Playa Azul condominiums. In order to state a claim for civil conspiracy, a plaintiff must set forth allegations showing "(1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting." Mosier v. Southern California Physicians Ins. Exchange, 63 Cal. App. 4th 1022, 1048 (Cal. Ct. App. 1998) (internal citations omitted). However, "[t]he mere knowledge, acquiescence, or approval of the act, without co-operation or agreement to co-operate, is not enough" to satisfy the first element. Wetherton v. Growers Farm Labor Ass'n, 275 Cal. App. 2d 168, 176 (Cal. Ct. App. 1969) (internal quotations omitted), disapproved of on other grounds by Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503 (Cal. 1994).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-702 CAS (JCGx) | Date | February 6, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA; ET AL. v. FIRST AMERICAN TITLE INSURANCE CO.; ET AL. | | |

In this case, plaintiffs fail to state with particularity the circumstances demonstrating an agreement between Sey Pet and First American to conceal the Mexican Litigation from plaintiffs. In this respect, plaintiffs' reliance on the Khelo Presentation is misplaced. First and foremost, nothing in the Presentation indicates that First American knew about Sey Pet's alleged practice of selling condominiums without disclosing the existence of the Mexican Litigation. Absent an allegation that First American was aware of Sey Pet's allegedly fraudulent conduct, any assertion that First American agreed to be part of a conspiracy is deficient. Next, plaintiffs' contention that First American must have told Sey Pet to shield the Mexican Litigation from plaintiffs because someone told Khelo to communicate only with its attorneys, is the kind of pure speculation that is insufficient under Rule 9(b). Accepting as true that someone made such a representation to Khelo, it does not follow that First American gave the same instruction to Sey Pet.[6] Instead, the Khelo presentation merely shows that First American issued title policies to Khelo and Sey Pet before the Mexican Litigation commenced, that plaintiffs later entered into POTAs with Sey Pet without knowledge of the Mexican Litigation, and that Khelo was told by someone not to discuss the Mexican Litigation with anyone besides Khelo's attorneys. None of these facts is sufficient to show that First American agreed to conceal, or was even aware, that Sey Pet was concealing the Mexican litigation from plaintiffs.

Similarly, the fact that First American is not liable to purchasers despite issuing title insurance to developers does not demonstrate the existence of an agreement to defraud purchasers. Instead, it is merely reflective of First American's ordinary business practice as a title insurer by which it provides title insurance to property owners without covering claims by subsequent purchasers. See In re Jamster Mktg. Litig., 2009 U.S. Dist. LEXIS 43592 at *16 (S.D. Cal. May 22, 2009) (finding failure to adequately plead fraud where plaintiff described conduct consistent with ordinary business practices using

---

[6] Even if First American in fact told Khelo to discuss the Mexican Litigation only with its attorneys, it does not necessarily show the existence of a conspiracy. Instead, while such a directive might be consistent with a conspiracy, it is at least as consistent with the ordinary business practice of providing a defense to an insured and taking steps to maintain privilege in connection with pending litigation. See, e.g., State Farm Mut. Auto Ins. Co. v. Fed. Ins. Co., 72 Cal. App. 4th 1442, 1429 (Cal. Ct. App. 1999) (noting the "triangular" attorney-client relationship among insured, insurer, and the attorneys who represent them).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-702 CAS (JCGx) | Date | February 6, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA; ET AL. v. FIRST AMERICAN TITLE INSURANCE CO.; ET AL. | | |

adjectives such as "fraudulently").

Finally, plaintiffs' contention that the Tolling Agreement supports the existence of a conspiracy is also unavailing. This is so because First American continues to defend Sey Pet's title in the Mexican Litigation. If Sey Pet were to prevail in the Mexican Litigation, it would be unnecessary for it to seek to recover on the Policy against First American. It is therefore reasonable to expect that First American and Sey Pet would desire to postpone potential litigation between themselves until the conclusion of the Mexican Litigation. Accordingly, plaintiffs' assertion that the Tolling Agreement demonstrates the existence of a conspiracy is rampant speculation that is not supported by the existence of the Tolling Agreement.[7]

In sum, plaintiffs fail to set forth specific factual allegations regarding an alleged conspiracy between First American and Sey Pet. Plaintiffs' speculative and conclusory allegations do not address who on behalf of First American made an agreement with Sey Pet or what acts by First American demonstrate such an agreement. Accordingly, they simply do not meet the heightened standards imposed by Rule 9(b).

## IV.   CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS defendant's motion to dismiss plaintiffs' claims for fraud, conspiracy, negligent misrepresentation, negligence, ILSA, RICO, and the UCL WITH PREJUDICE. The Court reserves decision as to whether to dismiss the action with prejudice pending a determination regarding plaintiffs' motion for leave to file a fourth amended complaint. Plaintiffs' motion to certify order for interlocutory appeal and for stay of proceedings pending resolution of motion and appeal is hereby taken under submission.

IT IS SO ORDERED.

|  |  | 00 | : | 12 |
|---|---|---|---|---|
|  | Initials of Preparer |  | CMJ |  |

---

[7] In addition, the Court notes that the Tolling Agreement is dated February 1, 2010, more than two years after Sey Pet disclosed the existence of the Mexican Litigation to plaintiffs.