UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 11-702 CAS (JCGx) | Date | December 17, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA, ET AL. V. SEYPET RESTORTS, LLC, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Glenn Haese

Attorneys Present for Defendants

Don Colleluori
Rosario Vizzie
James Smith (By Telephone)

**Proceedings:** MOTION TO DISMISS CASE (PLAINTIFFS' FOURTH AMENDED COMPLAINT) FILED BY DEFENDANT FIRST AMERICAN TITLE INSURANCE (Docket #276, filed August 6, 2012)

MOTION FOR SANCTIONS PURSUANT TO RULE 11 FILED BY DEFENDANT SEY PET LLC (Docket #274, filed August 6, 2012)

MOTION TO DISMISS CASE FILED BY DEFENDANT SEY PET LLC (Docket #273, filed August 6, 2012)

MOTION FOR RECONSIDERATION AND MOTION FOR LEAVE TO AMEND FOURTH AMENDED COMPLAINT (Docket #302, filed December 14, 2012)

## I.   INTRODUCTION

On June 17, 2010, plaintiffs filed suit against Seypet Resorts, LLC, Seypet Resorts, S. de R.L. de C.V. ("the Seypet entities") and First American Title Insurance Company ("First American") in the United States District Court for the District of Arizona. On January 21, 2011, the Honorable Stephen M. McNamee entered an order dismissing all direct claims against the Seypet entities on the grounds that an agreement entered into between plaintiffs and the Seypet entities contained a valid, enforceable forum selection clause designating the forum as the "competent courts of the city of Puerto Peñasco,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 11-702 CAS (JCGx) | Date | December 17, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA, ET AL. V. SEYPET RESTORTS, LLC, ET AL. | | |

Sonora, United Mexican States." See Dkt. 121 at 15. The same day he dismissed the claims against the Seypet entities, Judge McNamee transferred all claims against First American to this judicial district. On April 13, 2011, this Court granted plaintiffs' motion under Rule 19(a) of the Federal Rules of Civil Procedure to join Sey Pet as an indispensable party in this forum. See Dkt. 169 at 4.

On March 27, 2012, the Court granted plaintiff leave to file a Fourth Amended Complaint raising issues of Mexican law. On May 29, 2012, plaintiffs filed their Fourth Amended Complaint, which alleges claims for fraud, false advertising, negligence, and breach of contract under United States and California law (claims 1 – 10, 14 – 18), and alleges claims for Hecho Ilicito ("illicit acts"), legal and equitable relief, false advertising, and derivative liability under Mexican law and the law of the Mexican State of Sonora (claims 11 – 14).

On August 6, 2012, defendants Sey Pet, LLC ("Sey Pet") and First American filed motions to dismiss plaintiffs' Fourth Amended Complaint, and defendant Sey Pet filed a motion to impose sanctions on plaintiffs' counsel pursuant to Federal Rule of Civil Procedure 11. On October 29, 2012, plaintiffs opposed First American's motion to dismiss, and on November 8, 2012, plaintiffs opposed Set Pet's motion to dismiss and motion for sanctions. On November 26, 2012, Sey Pet filed replies in support of its motions, and on December 3, 2012, First American filed a reply. After considering the parties' arguments, the Court finds and concludes as follows.

II.   BACKGROUND

This case centers around what was to be a luxury property development in Puerto Peñasco, Mexico called Playa Azul.

The developers of Playa Azul formed the Seypet entities to promote and sell Playa Azul condominium units. First American, a California corporation, issued a $15 million title insurance policy ("the Policy") on the property effective December 13, 2004. Sey Pet is the named insured on the Policy.

There is currently a dispute in Mexico as to the ownership and conveyance of the land that encompasses the real estate on which Playa Azul is to be located. Specifically, there is a disagreement among the original landowners and the subsequent purchasers

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 11-702 CAS (JCGx) | Date | December 17, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA, ET AL. V. SEYPET RESTORTS, LLC, ET AL. | | |

regarding the consideration paid for the property as part of a conveyance of the North Beach land in 2004. As a consequence of this dispute, in early 2005, a lawsuit was filed in Puerto Peñasco. The lawsuit was subsequently re-filed in Hermosillo, Mexico in December 2005 or January 2006. The litigation in Mexico over title to the property (the "Mexican Litigation") is ongoing, and First American is defending the litigation on behalf of its insured, Sey Pet.

      Between June 2005 and March 2007, plaintiffs entered into contracts with the Seypet entities in the form of Promise of Trust Agreements ("POTAs") and paid more than $2.5 million to purchase condominiums at Playa Azul without any knowledge of the Mexican Litigation. Plaintiffs allege they were induced and enticed to invest in Playa Azul under similar circumstances, including but not limited to, advertising, promotions, and solicitations for Playa Azul in both Mexico and the United States. Plaintiffs were first made aware of the Mexican Litigation on June 20, 2007, when one of the developers of Playa Azul informed plaintiffs of the ongoing dispute. To date, plaintiffs have not come into possession of their condominium units, and construction on Playa Azul has lagged.

      In an order dated July 11, 2011, the Court dismissed plaintiffs' Second Amended Complaint ("SAC') in its entirety. Dkt. 200 at 15. Specifically, the Court dismissed with prejudice plaintiffs' claims against First American for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief on the grounds that plaintiffs lack standing because they are not third-party beneficiaries under the Policy.[1] The Court also dismissed with prejudice plaintiffs' claims for fraud, conspiracy, negligent misrepresentation, negligence, ILSA, RICO, and the UCL to the extent these were premised on the theory that First American is directly liable to plaintiffs for misrepresenting the status of Sey Pet's title to Playa Azul or for publishing misleading information in its advertising. However, to the extent these claims were premised on the theory that First American conspired with Sey Pet to fail to disclose the existence of the Mexican Litigation to plaintiffs, the Court dismissed these claims without prejudice to allow plaintiffs to allege specific facts showing the existence of a conspiracy.

---

[1] On October 13, 2011, the Court denied plaintiffs' renewed motion for reconsideration regarding whether plaintiffs were intended third-party beneficiaries under the Policy. Dkt. 215.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 11-702 CAS (JCGx) | Date | December 17, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA, ET AL. V. SEYPET RESTORTS, LLC, ET AL. | | |

    Plaintiffs' third amended complaint ("TAC") in support of their conspiracy theory centered around a Power Point presentation given by Khelo, the developer of a neighboring project called Riviera Real, regarding the status of that development in the context of the Mexican Litigation. TAC, Exh. 2 ("Khelo Presentation"). The TAC alleged that statements made in the Kehlo Presentation show: (1) that First American encouraged development and sale of condominium units after the Mexican Litigation commenced; (2) that First American promoted properties in the area where Playa Azul is located; (3) that First American had knowledge of the Mexican Litigation; and (4) that First American sought to hide the Mexican Litigation from plaintiffs. TAC ¶¶ 203–18, 246–49, 257–69, 308–20. Additionally, the TAC pointed to the existence of a Tolling Agreement between First American and Sey Pet, which tolled the limitations period on certain claims for both Sey Pet and its customers, as demonstrating the existence of a conspiracy.

    In an order dated February 6, 2012, the Court found that the TAC failed to plead facts showing that First American and Sey Pet conspired to defraud purchasers of Playa Azul condominiums. Dkt. 243 at 7 – 8. The Court found that plaintiffs failed to allege that First American knew about Sey Pet's alleged practice of selling condominiums without disclosing the existence of the Mexican Litigation, and failed to allege that there was an agreement between Sey Pet and First American to defraud condominium purchasers. Consequently, the Court dismissed the claims in the TAC with prejudice. Subsequently, the Court gave plaintiffs leave to file a fourth amended complaint ("FOAC") to allege new claims arising out of First American's alleged violations of Mexican law. Dkt. 260 at 5 – 6.

    In the FOAC, plaintiffs allege that First American was not licensed to issue title insurance policies under Mexican law when it issued the Policy, and that First American was not licensed to do business in Mexico. FOAC ¶ 170. Plaintiffs further claim that the Policy is void, and that First American's assertion that it could issue valid title insurance policies under Mexican law was based on its belief that it could issue policies through a Mexican insurance company named "Grupo Nacional Provincial." Id. Plaintiffs explain that they learned these new facts through the deposition of Mitchell Creekmore, a manager at Stewart Title Guaranty Company who is allegedly familiar with facts related to this litigation. See FOAC ¶¶ 166 – 171, 175 – 180. Plaintiffs assert that all of the claims alleged in the FOAC arise out of these newly discovered facts regarding the validity of the Policy under Mexican law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 11-702 CAS (JCGx) | Date | December 17, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA, ET AL. V. SEYPET RESTORTS, LLC, ET AL. | | |

## III.  LEGAL STANDARD

### A.  Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  However, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Twombly and Iqbal); Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 129 S.Ct. at 1950.

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

| | **CIVIL MINUTES - GENERAL** | | JS-6 |
|---|---|---|---|
| Case No. | CV 11-702 CAS (JCGx) | Date | December 17, 2012 |
| Title | LOUIS HOBAICA, ET AL. V. SEYPET RESTORTS, LLC, ET AL. | | |

U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

    B.    Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity. Federal Rule of Civil Procedure 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud." Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1103–04 (9th Cir. 2003). A claim is said to be "grounded in fraud" or "'sounds in fraud'" where a plaintiff alleges that defendant engaged in fraudulent conduct and relies on solely on that conduct to prove a claim. Id. "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Fed. R. Civ. P.] 9(b)." Id. However, where a plaintiff alleges claims grounded in fraudulent and non fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements. Id. at 1104.

A pleading is sufficient under Fed. R. Civ. P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth. In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Thus, Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**   JS-6

| Case No. | CV 11-702 CAS (JCGx) | Date | December 17, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA, ET AL. V. SEYPET RESTORTS, LLC, ET AL. | | |

how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false." Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

## IV. ANALYSIS

### A. Plaintiffs' Claims under Mexican Law

Plaintiffs allege four claims under Mexican federal law and the law of the Mexican state of Sonora, and also allege claims under California and federal law arising out of violations of Mexican law. In essence, plaintiffs allege that the Policy is invalid under Mexican law and that First American was not properly licensed by the Mexican government to issue the Policy.

Federal Rule of Civil Procedure 44.1 sets out the procedure by which a federal court applies foreign law. Rule 44.1 provides:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

"[E]xpert testimony accompanied by extracts from foreign legal materials has been and will likely continue to be the basic mode of proving foreign law." Universe Sales Co., Ltd. v. Silver Castle, Ltd., 182 F.3d 1036, 1038 (9th Cir. 1999). Although it is permissible under Rule 44.1 for a court to engage in its own research to determine the content of foreign law, "it is neither novel nor remarkable for a court to accept the uncontradicted testimony of an expert to establish the relevant foreign law." Id. at 1038; but see Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp., 161 F.3d 314, 319 (5th Cir. 1998) ("[F]ederal judges may reject even the uncontradicted conclusions of an expert witness and reach their own decisions on the basis of independent examination of foreign legal authorities.).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 11-702 CAS (JCGx) | Date | December 17, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA, ET AL. V. SEYPET RESTORTS, LLC, ET AL. | | |

Here, both parties submit expert testimony regarding the applicability of Mexican law. Defendants' expert, David Lopez ("Lopez"),[2] opines that: (1) Mexican law does not apply to the Policy or claims arising out of the Policy, (2) plaintiffs would lack standing to invalidate the Policy under Mexican law, and (3) any Mexican law claims arising out of the Policy would be barred by the statute of limitations. Turning first to Lopez' arguments concerning the applicability of Mexican law, Lopez notes that Mexican law would not apply to the interpretation of the Policy due the Policy's choice of law provision. Lopez Decl. ¶ 3.2. Specifically, Lopez notes that the Policy contains a choice of law provision stating that California law governs its interpretation, and explains that "[u]nder Mexican law, where the parties to a contract designate the law of a particular jurisdiction to control the contract and their rights and obligations thereunder, Mexican law will respect and enforce the choice of the parties." Lopez Decl. ¶ 3.2. Lopez further explains that Mexican law would not apply to the interpretation of the Policy even in the absence of a choice of law provision. According to Lopez, because the Policy was executed in the United States and both contracting parties are businesses formed in the United States, Mexican law is inapplicable because it only applies to contracts entered into in "Mexican national territory." Lopez Decl. ¶ 3.3 ("I did not identify in the relevant Mexican law any provision that states that Mexican law extraterritorially governs the interpretation, rights and remedies under a title insurance policy issued by a U.S. insurer to a U.S. insured in the United States. To the contrary, the relevant Mexican law indicates that its application is limited to matters <u>within</u> the Republic of Mexico."). Accordingly, Lopez concludes that there is no basis for applying Mexican law to determine the validity of the Policy. Lopez Decl. ¶ 3.

Lopez also sets out reasons why Mexico's false advertising law and the law of the Mexican state of Sonora are not applicable. According to Lopez, Mexican false advertising laws do not apply to claims involving the Policy because it was sold in the United States and no Mexican business entities or consumers were parties to the transaction. Lopez Decl. ¶ 3.4. With respect to Sonoran law, Lopez explains it could not apply in this case because any Mexican state law would be pre-empted by Mexican

---

[2] Mr. Lopez graduated from Harvard Law School in 1988, has testified as a Mexican law expert over 75 times, has published several books and articles on Mexican law, and is a partner with the law firm Pulman, Cappuccio, Pullen & Benson. Lopez Decl. Ex. 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  O  JS-6

| Case No. | CV 11-702 CAS (JCGx) | Date | December 17, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA, ET AL. V. SEYPET RESTORTS, LLC, ET AL. | | |

federal law pursuant to the Supremacy Clause in Mexico's Constitution. Lopez Decl. ¶¶ 5.1 – 5.3. Lopez explains that Mexico's commercial law is exclusively federal, and hence that any Mexican law that could apply to the claims in this case would have to be Mexican federal law. Lopez Decl. ¶ 5.2.

Turning next to Lopez' opinions regarding plaintiffs' standing under Mexican law, Lopez opines that even if Mexican law were to apply to the Policy, plaintiffs would not have standing to challenge its validity because they are not third party beneficiaries of the Policy. Lopez Decl. ¶ 6.2. According to Lopez, Article 36(IV) of Mexico's General Law of Insurance Institutions and Mutual Societies provides that the beneficiaries of an insurance contract must be clearly specified in writing, and this rule compels the conclusion that plaintiffs are not beneficiaries because the Policy does not mention them. Lopez Decl. ¶ 6.2. Consequently, Lopez explains that the plaintiffs cannot challenge the validity of the Policy because "only parties to the contract or the insured have the legal 'right' to complain that a particular insurance contract violates the prohibitions of Article 3." Lopez Supp. Decl. ¶ 10.

Turning last to Lopez' opinions about the applicable statute of limitations, Lopez states that all of plaintiffs' Mexican law claims would be barred by the applicable statute of limitations even if Mexican law applied. Lopez explains that the applicable statute of limitations for claims arising out of an insurance policy is set out in Article 81 of the Law of Insurance Contracts, which provides:

> The statute of limitations for all actions that arise out of an insurance contract shall be:
>
> I. Five years, dealing with coverage for death on life insurance,
> II. Two years, in all other cases.
>
> In all cases, the deadlines shall be counted from the date of the event from which they originate.

Lopez Decl. ¶ 7.1. Lopez states that the statute of limitations began to run on any claims arising out of the Policy on the day when plaintiffs knew of "rights in their favor," which would have occurred in June 2007, when plaintiffs were initially given notice that First American had issued the Policy. Lopez Decl. ¶ 7.1; FOAC Ex. 9 (June 2007 e-mail

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 11-702 CAS (JCGx) | Date | December 17, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA, ET AL. V. SEYPET RESTORTS, LLC, ET AL. | | |

giving plaintiffs notice of the Policy). Consequently, because the claims were not brought prior to June 2009, Lopez concludes that all of plaintiffs' Mexican law claims would be barred. Lopez Decl. ¶¶ 7, 7.2 – 7.4, 8.3.[3]

In summary, according to Lopez, all of plaintiffs' claims under Mexican law fail and there is no basis in Mexican law for invalidating the Policy. Plaintiffs' expert, Guilllermo Jose Garcia Sanchez ("Sanchez"),[4] does not explicitly reply to any of Lopez' testimony. In fact, Sanchez does not offer any opinion on several critical legal issues raised by Lopez' testimony, such as the extraterritorial application of Mexican law, the choice of law provision in the Policy, the applicability of the Sonoran Civil Code, the statute of limitations for claims arising from an insurance policy, Mexico's false advertising law, and whether plaintiffs have standing to invalidate the Policy. Instead, the focus of Sanchez' testimony is his opinion that First American issued the Policy in violation of Article 3(II)(6) of Mexico's General Law of Insurance Institutions and Mutual Societies. Sanchez Decl. at 9 – 10. Sanchez asserts that this provision prevents foreign insurance companies from executing insurance contracts that cover losses or other events in Mexico unless the foreign company is given permission to provide insurance by both the Minister of the Treasury and Public Credit, and the National Commission on Insurance and Surety. Id. at 10 – 11. Additionally, Sanchez claims that an action to nullify the Policy would have a ten year statute of limitations pursuant to Article 1047 of the Mexican Commerce Code. Id. at 11.

---

[3] Lopez also briefly addresses plaintiffs' claim labeled "derivative liability." Lopez points out that there is no claim for relief under Mexican law called "derivative liability," and explains that derivative liability is a doctrine akin to respondeat superior under which one person becomes liable for the acts of another. Lopez Decl. ¶ 8.1. Lopez also explains that while it appears that plaintiffs are attempting to assert Sey Pet's claims against First American on a theory labeled "derivative liabiliy," no provision of Mexican law allows plaintiffs to pursue such a claim for relief. Lopez Decl. ¶ 8.2.

[4] Mr. Sanchez is licensed to practice law in Mexico, and has received LLM degrees from Tufts University and Harvard University in 2011 and 2012 respectively. Mr. Sanchez is currently a student in Harvard Law School's SJD program. Sanchez Decl. 4 – 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 11-702 CAS (JCGx) | Date | December 17, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA, ET AL. V. SEYPET RESTORTS, LLC, ET AL. | | |

Lopez replies to Sanchez' opinion in his supplemental declaration. There, Lopez explains that Article 3(II)(6) of Mexico's General Law of Insurance Institutions and Mutual Societies would not operate to invalidate the Policy. As Lopez explains, "Article 3(II) is a consumer-focused provision that prohibits Mexican consumers from contracting with foreign (non-Mexican) companies for certain types of insurance, such as life insurance when the insured is in Mexico at the time he/she enters into the insurance contract." Lopez Supp. Decl. ¶ 5. Lopez concludes that Article 3(II)(6) does not prohibit U.S. companies from insuring other U.S. companies against the risk of loss in Mexican territory, but instead places limits on who Mexican consumers can purchase insurance from. Lopez Supp. Decl. ¶ 5. Additionally, Lopez recognizes that Mexico's Commercial Code contains a default 10-year statute of limitations for commercial claims. Lopez Supp. Decl. ¶ 11. However, Lopez explains that the 10-year statute of limitations does not apply to this claims in this because, under Mexican law, "a specific legal provision regulating a subject controls over a general legal provision," and therefore the two year statute of limitations in Article 81 of the Law of Insurance Contracts applies because it is the more specific provision. Lopez Supp. Decl. ¶ 11.

After considering the testimony of both experts, the Court adopts Lopez' conclusions. Sanchez' testimony casts no doubt on Lopez' conclusions regarding the applicability of Mexican law to plaintiffs' claims and the Policy, nor does his testimony cast doubt on Lopez' opinion that plaintiffs' lack standing to challenge the validity of the Policy. Furthermore, Lopez' supplemental declaration casts serious doubt on Sanchez' conclusion that Article 3(II)(6) applies in this case and that the applicable statute of limitations is ten years. The Court therefore accepts Lopez' largely unrebutted opinions that Mexican law is inapplicable, that plaintiffs' Mexican law claims would be barred by the applicable statute of limitations even if Mexican law were applicable, and that plaintiffs' lack standing to challenge the validity of the Policy under Mexican law. Consequently, the Court finds that plaintiffs' claims under Mexican law should be dismissed, and that Mexican law does not operate to invalidate the Policy.

### B. Plaintiff's Claims under Federal Law and California Law

Counts 1 – 10 and 15 – 18 of the FOAC allege claims for relief under United States and California law. Plaintiffs' opposition does not offer any argument against dismissing counts 1 – 10. Moreover, these counts appear to be materially identical to those the Court has already dismissed. Claims 7 – 8, for instance, request that the Court find that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                                                         JS-6

| Case No. | CV 11-702 CAS (JCGx) | Date | December 17, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA, ET AL. V. SEYPET RESTORTS, LLC, ET AL. | | |

plaintiffs' are intended beneficiaries of the Policy, despite the fact that the Court has already found otherwise. Dkt 200, 215. Claim 5 appears to pursue the theory that Sey Pet and First American conspired to keep plaintiffs ignorant of the litigation in Mexico, despite the fact that the Court has rejected this theory with prejudice and dismissed claims arising out of this alleged conspiracy with prejudice. Dkt. # 243. Because claims 1 – 10 appear identical to claims already dismissed with prejudice, and because plaintiffs' have not opposed dismissal of these claims, the Court finds that they should be dismissed.

Plaintiffs' opposition does argue that claims 15 – 18, which allegedly arise from violations of Mexican law and the invalidity of the Policy, should not be dismissed. Claim 15 is alleged under California's unfair competition law, claims 16 – 17 are claims for negligent and intentional misrepresentation, and claim 18 is a false advertising claim under the Lanham Act, 15 U.S.C. § 1051 et seq..

Claim 15 alleges that it was an unfair business practice for defendants to issue or make advertisements in connection with the Policy because the Policy was invalid under Mexican law. In light of the Court's finding that Mexican law does not govern the interpretation of the Policy nor in any way invalidate the Policy, this claim necessarily fails.[5]

Similarly, claims 16 – 17 allege that First American falsely represented that the Policy was valid under Mexican law, and therefore these claims necessarily fail as well. Additionally, these claims fail under Federal Rule of Civil Procedure 9(b). Plaintiffs fail to mention which individuals made statements about the validity of the Policy under

---

[5] Plaintiffs also repeatedly state that First American is liable under various legal theories because it was not licensed to do business in Mexico. It is unclear what license First American lacked, or why it was required to have a license to do business in Mexico. Presumably, this argument relies on the theory set out in Sanchez' declaration that First American never sought approval from the Minister of the Treasury and Public Credit and the National Commission on Insurance and Surety to issue insurance that would otherwise violate Article 3(II)(6) of Mexico's General Law of Insurance Institutions and Mutual Societies. Because First American's issuance of the Policy was not subject to Article 3(II)(6), however, First American had no duty to seek such approval, and this argument fails.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**　　　JS-6

| Case No. | CV 11-702 CAS (JCGx) | Date | December 17, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA, ET AL. V. SEYPET RESTORTS, LLC, ET AL. | | |

Mexican law, and hence have failed to allege the circumstances of the alleged misrepresentations with specificity. See Odom v. Microsoft Corp., 486 F.3d 541, 543 (9th Cir. 2007) ("Rule 9(b) requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."). Plaintiffs' argument that Rule 9(b) has been met because "plaintiffs' complaint delineates First American as the entity responsible for engaging in fraud in numerous places" is not well-taken: if a complaint merely had to allege that the defendant was responsible for fraud claims alleged against it, Rule 9(b)'s requirement that plaintiffs must allege who made allegedly false statements would be rendered a nullity. Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011).

  Finally, claim 18 alleges that First American engaged in false advertising by marketing void insurance policies. This claim also fails in light of the Court's finding that the Policy is not void under Mexican law. Additionally, plaintiffs lack standing to pursue a false advertising claim under the Lanham Act. Barrus v. Sylvania, 55 F.3d 468, 470 (9th Cir. 1995). In order to have standing to bring a false advertising claim under 15 U.S.C. § 1125(a), "plaintiff must allege commercial injury based upon a misrepresentation about a product, and also that the injury was 'competitive,' i.e., harmful to the plaintiff's ability to compete with the defendant." Id. Plaintiffs have not alleged any such commercial and competitive injury.

  Therefore, the Court finds that plaintiffs' claims under federal law and California law should be dismissed.

  **C. Defendant Sey Pet's Motion for Sanctions**

  Defendant Sey Pet moves to sanction plaintiffs' counsel for naming it as a defendant in claims 11 – 14. Sey Pet notes that pursuant to the order transferring the case to this Court, its only role as a defendant arises out of its status as the named insured on the Policy, and argues that by naming it as a defendant on claims 11 – 14, plaintiffs improperly sought relief from Sey Pet that they are not entitled to pursue. Sey Pet concludes that plaintiffs' counsel named it as a defendant on these claims in bad faith, and therefore should be sanctioned.

  The Court rejects this argument. To the extent claims 11 – 14 are intelligible, it appears that part of the relief plaintiffs seek is a declaratory judgment that the Policy is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 11-702 CAS (JCGx) | Date | December 17, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA, ET AL. V. SEYPET RESTORTS, LLC, ET AL. | | |

void. Consequently, because Sey Pet is the named insured on the Policy, it does not appear that plaintiffs exhibited any bad faith by naming Sey Pet as a defendant on these counts.

### D. Plaintiffs' Request for Reconsideration

On December 14, 2012, plaintiffs requested that the Court reconsider Judge McNamee's order finding that the POTAs executed by plaintiffs and the Sey Pet entities contained enforceable forum selection clauses designating the "competent courts of the city of Puerto Peñasco, Sonora, United Mexican States" as the proper venue for claims against Sey Pet Mexico. Dkt. 121 at 15.[6] Plaintiffs seek reconsideration of Judge McNamee's order so they can assert tort claims against Seypet Resorts, S. de R.L. de C.V. ("Sey Pet Mexico").

Plaintiffs claim that a recent decision by Judge Bolton in the District of Arizona provides grounds for reconsidering Judge McNamee's order. According to plaintiffs, this decision considered a similar forum selection clause but "declined to enforce [it]," leading to an "irreconcilable determination[s]" by two judges sitting in the District of Arizona. Dkt. 302 at 13 (citing Douglas Haese, et al., vs. Stewart Title Guaranty Company, et al, CV-10-1687-PHX-SRB Dkt. 284 (D. Ariz. 2012) ("Haese Order")). Plaintiffs further claim that "[w]hen Judge Bolton interpreted an almost identical forum-selection clause as not applying to Plaintiffs' tort claims . . . a material change in law in the District of Arizona was effectuated." Id. at 8 – 9.

Local Rule 7-18 sets forth the bases upon which the Court may reconsider the decision on any motion:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of: (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable

---

[6] The Court finds plaintiffs' motion for reconsideration and motion for leave to file a Fourth Amended Complaint, Dkt. 302, appropriate for decision without further briefing or oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing date of February 11, 2013 is vacated, and the matter is hereby taken under submission.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 11-702 CAS (JCGx) | Date | December 17, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA, ET AL. V. SEYPET RESTORTS, LLC, ET AL. | | |

diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.  No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

L.R. 7-18.  Presumably, plaintiffs' position is that Judge Bolton's unpublished decision represented a change in law that occurred after Judge McNamee's order.  This argument fails because, among other reasons, Judge Bolton's order and Judge McNamee's order are not inconsistent.  Judge Bolton's refusal to enforce the forum selection clause rested on the fact that the defendants procedurally defaulted by not asserting their forum selection clauses as a defense in their answer, an issue that was not raised in Judge McNamee's order.  Haese order at 5.  While Judge Bolton's order does contain a footnote stating that it is unclear whether the forum selection clause could have applied to both the tort and contract claims in that case, this observation was neither the basis of the decision nor inconsistent with Judge McNamee's order, which also recognized that forum selection clauses do not always apply to both tort and contract claims.  Compare Haese order at 5 n. 2; Dkt. 121 at 7.  Consequently, plaintiffs have not pointed to any reason to reconsider Judge McNamee's prior order, so plaintiffs' motion is denied.

### E. Plaintiffs' Request for Leave to Amend

On December 14, 2012, plaintiffs filed a request for leave to file a Fifth Amended Complaint.  It is unclear precisely what theory plaintiffs' intend to pursue in an amended pleading.  In some portions of plaintiffs' request, it appears that plaintiffs intend to pursue a theory of alter-ego liability against Carlos Davalos ("Davalos") and Raul O'Farrill ("O'Farrill").  Dkt. 302. at 5, 17.  Plaintiffs assert that Davalos executed the plaintiffs' POTAs on behalf of Sey Pet Mexico, and additionally that Davalos works for O'Farrill.  Dkt. 302 at 5.  Plaintiffs also allege that O'Farrill completed the title examination pursuant to which First American issued the policy, and that O'Farrill plays a role in the management affairs of some of the Sey Pet entities.  Id. at 5.  Plaintiffs further assert that Davalos and O'Farrill are are "de-facto partial owner[ers]" of defendant Sey Pet.  Id. at 17.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**     JS-6

| Case No. | CV 11-702 CAS (JCGx) | Date | December 17, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA, ET AL. V. SEYPET RESTORTS, LLC, ET AL. | | |

    In other portions of plaintiffs' request, it appears that plaintiffs intend to pursue a theory under which Sey Pet is liable for the acts of Sey Pet Mexico. Plaintiffs assert that "[a]ll the Sey Pet entities are one in the same, and have benefitted from the theft of plaintiffs' funds," and that Sey Pet LLC is a "shell corporation" acting on behalf of Sey Pet Mexico by virtue of its status as the beneficiary of the Policy. Id. at 7, 17.

    Regardless of which theory plaintiffs intend to pursue, their request to file a Fifth Amended Complaint contains no explanation of why the new facts and theories alleged add up to a claim for relief. Rather than setting out why these new facts expose new or existing defendants to liability, plaintiffs make vague claims such as, "O'Farrill's role as both a de-facto owner of the Seypet entity who is the beneficiary of the $15 million First American Title Insurance Policy, while also being the title examiner for First American that allowed for the issuance of the policy in the first instance must be [pled] with appropriate counts," and "Plaintiffs' funds were accepted and converted by [the Sey Pet entities]; therefore, each subsidiary is clearly liable for the acts of the other." Id. at 17. Plaintiffs do not set out any theory explaining why piercing the corporate veil would be appropriate in this case, nor do they explain why Davalos and O'Farrill are "de-facto owners" of the Sey Pet entities, nor why Sey Pet LLC is liable for the acts of Sey Pet Mexico by virtue of the fact that Sey Pet LLC is the beneficiary of the Policy.

    Accordingly, because plaintiffs have not sketched any theory under which their amended pleading could state a claim, the Court denies plaintiffs leave to amend. "Futility alone can justify the denial of a motion for leave to amend." Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004). Here, amendment would be futile because every claim plaintiffs has pursued in this case has been dismissed with prejudice, and plaintiffs' request does not present a cogent explanation regarding how they could state a new claim. Consequently, plaintiffs' request for leave to amend is denied.[7]

---

    [7] Plaintiffs have had ample opportunities to amend their complaint in this litigation, but pleading after pleading has failed to state a claim for relief. When the Court found that plaintiffs could not recover as beneficiaries of the Policy, the Court granted plaintiffs leave to pursue a new theory that defendants conspired to suppress information about the Mexican litigation. When that theory failed, the Court again granted plaintiffs' leave to pursue another novel theory that the Policy was void under Mexican law. Plaintiffs only sought leave to pursue a brand new theory in the face of an order dismissing this latest

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   JS-6

| Case No. | CV 11-702 CAS (JCGx) | Date | December 17, 2012 |
|---|---|---|---|
| Title | LOUIS HOBAICA, ET AL. V. SEYPET RESTORTS, LLC, ET AL. | | |

## V. CONCLUSION

In accordance with the foregoing, the Court hereby DISMISSES WITH PREJUDICE plaintiffs' Fourth Amended Complaint, and DISMISSES THIS ACTION WITH PREJUDICE.

IT IS SO ORDERED.

00 : 17

Initials of Preparer    CMJ

---

theory of the case.